IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Case No. 3:23cr68 (RCY) |
| ) | |
| SHRONDA COVINGTON, ) | |
| ) | |
| TONYA FARLEY, ) | |
| ) | |
| and ) | |
| ) | |
| YOLANDA BLACKWELL, ) | |
| ) | |
| Defendants. ) | |

**UNITED STATES' OPPOSITION
TO DEFENDANT COVINGTON'S MOTION *IN LIMINE*
TO EXCLUDE ALL EVIDENCE RELATED TO W.W.'S TIME IN SUICIDE WATCH**

The United States submits this opposition to defendant Shronda Covington's Motion *in Limine* to Exclude All Evidence Related to W.W.'s Time in Suicide Watch, as adopted by defendant Tonya Farley. Dkts. 102, 106. Evidence relating to the victim's serious medical needs, injuries, and death is not only relevant; it is highly probative and essential to the charged offenses.

**Factual and Procedural Background**

A. **Procedural History**

Defendants Shronda Covington, Tonya Farley, and Yolanda Blackwell were officials with the federal Bureau of Prisons (BOP). On August 1, 2023, a federal grand jury returned a superseding indictment charging each defendant with separate counts of violating 18 U.S.C. § 242 by, while acting under color of law as BOP officials, willfully violating the constitutional rights of inmate W.W. by demonstrating deliberate indifference to his serious medical needs. The Indictment further charges defendants Covington and Farley in separate counts with violating 18

1

U.S.C. § 1001 by making materially false statements to federal agents about the investigation and charges defendant Farley with violating 18 U.S.C. § 1519 by knowingly making a false entry in an official report following W.W.'s death. Dkt. 34.

Trial in this matter is set for April 22, 2024. Dkt. 111. Defendant Covington, as joined by defendant Farley, has moved to sever her trial on largely the same grounds as the present motion. Dkt. 101. This Court subsequently granted defendant Farley's motion to adopt that motion. Dkt. 110.

### B. Factual Background

W.W. was an inmate in the custody of the BOP Federal Correctional Institution, Petersburg. Beginning in the early morning hours of January 9, and continuing until his death on the morning of January 10, W.W. exhibited several severe medical symptoms, including sudden incontinence, incomprehension, incoherence, and the inability to stand or walk. Without medical attention to address his apparent crisis, W.W. fell into walls and other objects over and over again, finally falling to the ground and dying. W.W. fell for the final time at approximately 6:30 a.m. and was pronounced dead after staff responded to the cell nearly an hour and forty minutes later. Medical examiners conducted an autopsy and determined that W.W. died of blunt force trauma.

The defendants were BOP officials at the prison who were responsible for W.W.'s care during various shifts over the two-day period of his medical deterioration and death. Defendant Covington was a lieutenant and the highest-ranking officer at the prison from midnight to 8 a.m. on January 9, the period during which, according to witnesses, W.W. first began exhibiting his sudden symptoms. Officers reported W.W.'s symptoms to defendant Covington, but she failed to respond to W.W.'s cell, let alone to provide him with medical care necessary for his serious medical need.

Defendant Farley was a registered nurse who worked from approximately 11 a.m. to 9 p.m. on January 9. After correctional officers repeatedly asked for medical assistance for W.W., defendant Farley medically assessed W.W. and wrote a report purportedly documenting that assessment before W.W. was transported to a suicide watch cell. Defendant Farley failed to provide W.W. with medical care necessary for his serious medical need.

Defendant Blackwell was the control officer who worked from midnight to 8 a.m. on January 10; inmate observers assigned to watch W.W. in the suicide watch cell repeatedly called defendant Blackwell to report that W.W. had fallen on several occasions and was injured. Defendant Blackwell also failed to provide W.W. with medical care necessary for his serious medical need.

Defendants Covington and Farley later provided voluntary interviews to federal officials during which they minimized their knowledge of W.W.'s symptoms and attempted to justify their failure to provide him with necessary care.

The United States will show that each of these officials had a duty to ensure that W.W. received care for his apparent serious medical need; each official violated her duty to do so; and each official's deliberate indifference resulted in W.W.'s bodily injury and death. Despite these independent violations, the vast majority of the United States' proof is common to all three defendants, including, but not limited to: (1) the testimony of eyewitnesses who observed W.W.'s symptoms and readily apparent serious medical need over the course of his approximately 30-hour ordeal, including W.W.'s cellmate (who observed W.W.'s symptoms throughout defendant Covington's shift and through most of defendant Farley's shift), correctional officers (some of whom observed W.W.'s symptoms during defendant Covington's shift and during defendant Farley's shift), and inmate suicide watch companions (who observed W.W.'s symptoms during

defendant Blackwell's shift); (2) the testimony of the on-call physician about which staff could and should have called her, including defendant Covington and defendant Farley; (3) BOP policies applicable to all BOP employees, as explained by supervisors, including the facility's captain; (4) surveillance footage showing W.W.'s symptoms at various points and the last twelve hours of his life, including time during which defendants Farley and Blackwell were both on shift; and (5) testimony from the medical examiners who conducted the autopsy of W.W. and who will testify that if any one of the defendants had acted to provide W.W. with medical care, his life could have been saved. Further, as to the false statements charges, the United States will present (6) testimony from federal agents regarding the nature of their investigation, their jurisdiction, the advisements given to all three defendants, and the defendants' charged false statements and other statements that evince willfulness, one of the elements of the color-of-law offenses.

## **Argument**

The evidence that Defendants Covington and Farley seek to exclude—evidence relating to the last twelve hours of the victim's life, during which time he was in a suicide observation cell— is relevant, highly probative, and not unfairly prejudicial or confusing, and the defendants' motion should be denied. The defendants' only argument to the contrary is that, because they were not physically present for some of W.W.'s injuries and for the pronouncement of his death, evidence thereof should not be admitted against them. Taken to its logical conclusion, however, this argument would mean that, in any death-resulting case, the government could not offer evidence of the victim's death if the defendant was not physically present for the death. That result would not only severely undermine the government's ability to prove any number of death-resulting offenses, including civil rights offenses in which a victim dies after eventually succumbing to injuries from a constitutional deprivation, but would also afford a windfall to defendants, like those

in the present case, who left their posts before ensuring that an inmate or arrestee entrusted to their care received necessary medical care. Such a result is undesirable and unworkable and finds no support in the law.

First, evidence of W.W.'s time in the suicide observation cell is relevant to the felony element of the charged offenses: W.W.'s bodily injury and death. *See* 18 U.S.C. § 242 (providing that the offense is a felony "if bodily injury results" or "if death results" from the offense). The defendants are charged with causing W.W.'s injuries and death. To prove that element of the offense, the United States must prove that W.W. sustained injuries and died. Evidence relating to W.W.'s injuries and death—including, but not limited to, surveillance video showing the victim sustaining injuries and dying, photographs showing the victim's injuries, and witness testimony and documentation about the same—is therefore essential to the United States' proof. Indeed, how the government could possibly prove its case without evidence of the victim's injuries and death is unclear. To the extent defendants Covington and Farley intend to suggest that they are entitled to a stipulation or the like, they have not offered one, and in any event, the Supreme Court has foreclosed that argument. *See Old Chief v. United States*, 519 U.S. 172, 189 (1997) (reaffirming and discussing "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away").

Relatedly, the evidence is also relevant to causation. Proving that bodily injury or death "resulted" from the defendants' actions requires proof W.W.'s injuries and death would not have occurred "but for" the defendants' deliberate indifference to his serious medical need. *Cf. Burrage v. United States*, 134 S. Ct. 881 (2014) (holding that phrase "results from" as that term is used in the Controlled Substances Act requires a showing of but-for cause). A defendant's conduct, however slight its cumulative effect, can be a "but for" cause of death, provided that the conduct

played a necessary role in causing the death. *See id.* (describing but-for causes of a baseball game victory to include not only the winning run, but also skillful pitching, coaching decisions, and "the league's decision to schedule the game"). Had any of the defendants sent W.W. to the hospital (among other available interventions), as they were able and obligated to do, he would not have been sent to the suicide observation cell, where he repeatedly fell, sustaining injuries and dying. The challenged evidence shows the chain of causation between the defendants' criminal indifference and W.W.'s foreseeable and naturally resulting injuries and death. *See United States v. Harris*, 701 F.2d 1095, 1101 (4th Cir. 1983) ("[W]here death foreseeably and naturally results from the rights-violating conduct, the statutory requirement [of 18 U.S.C. § 241] for enhanced punishment is met").

Evidence depicting W.W.'s symptoms is also directly relevant to another element of the color-of-law offense: that the defendants deprived W.W. of his constitutional right to be free from cruel and unusual punishment. *See United States v. Cowden*, 882 F.3d 464, 474 (4th Cir. 2018) ("To obtain a conviction for deprivation of rights under color of law in violation of 18 U.S.C. § 242, the government must show that the defendant (1) willfully (2) deprived another individual of a constitutional right (3) while acting under color of law."). To show the constitutional deprivation, the United States must first show that W.W. had an objectively serious medical need, *i.e.*, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). This prong is objective and must be proven independently of the subjective prong, under which the United States must show that each defendant had actual subjective knowledge of a substantial risk of serious harm, and responded with deliberate indifference to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834,

836–37 (1994); *Iko*, 535 F.3d at 241 ("An officer is deliberately indifferent only when he knows of and disregards the risk posed by the serious medical needs of the inmate.") (internal quotation marks omitted).

The video, documentary, and testimonial evidence the defendants seek to exclude depict W.W's serious medical need and is therefore directly relevant to the objective prong of the constitutional violation. *See, e.g.*, *Scarbro v. New Hanover Cnty.*, 374 F. App'x 366, 371 (4th Cir. 2010) (holding that evidence that victim "had urinated on himself, he was unable to speak coherently, and he was unable to walk" made "clear that [he] had an objectively serious medical need"). The fact that this evidence captured W.W.'s serious medical need beginning less than an hour after defendant Farley's medical assessment and twelve hours after defendant Covington's shift does not render it irrelevant or inadmissible as to them. The defendants cite no case law or rule of evidence in support of their argument that the only evidence that should be admissible against them is that which they personally observed, and the undersigned is unaware of any. To the contrary, the Fourth Circuit has allowed a victim to establish the objective component of a deliberate indifference claim through expert testimony at trial; by definition, such evidence could not have been contemporaneously observed by the charged official. *See, e.g.*, *Creech v. Nguyen*, 153 F.3d 719 (4th Cir. 1998) (holding that plaintiff established objective component of deliberate indifference claim through expert testimony at trial before turning to separate question of whether defendant knew of the plaintiff's serious medical need). The defendants can try to present evidence or argument that they were *subjectively* unaware of this serious medical need, but the evidence would still be probative to show that, *objectively*, W.W. *had* a serious medical need. In any event, and as relevant to the subjective prong, witnesses will testify that many of W.W.'s symptoms were unchanging throughout his ordeal. The defendants will be free to present evidence to the contrary,

7

or to argue that W.W.'s condition declined after their encounters with him in some way that is meaningful to their liability, but they are not free to exclude highly probative evidence demonstrating the victim's sudden and apparent medical crisis.

Evidence of W.W.'s obvious symptoms of a medical crisis are also relevant to the false statement and obstruction offenses with which the defendants charged. Defendant Covington is charged with falsely telling federal investigators that a correctional officer called her to report not symptoms of an apparent medical crisis, as the officer claimed, but rather merely that W.W. was walking around his cell, listening to music, and doing push-ups. The jury should be allowed to see and hear how W.W. was in fact acting during his crisis to judge for themselves whether they should credit defendant Covington's description of the officer's report. Defendant Farley, for her part, wrote a report claiming that W.W. was *not* exhibiting signs or symptoms of acute distress and that he verbalized understanding of his medical care. Evidence that W.W. *was* exhibiting signs and symptoms of acute distress and that he could not talk during his ordeal is highly probative that defendant Farley's report was, in fact, false. The fact that some of this evidence relates to a period mere hours after the defendants' shifts does not render it irrelevant: Again, if the defendants want to argue that W.W.'s condition changed in some legally and factually significant way after they left their shifts, they are free to do so. The jury will be instructed to follow the law and find each defendant guilty beyond a reasonable doubt; the defendants have offered no reason to believe that the jury will be unable to follow its charge.

The evidence is thus highly probative of the charged offenses and admissible against each of the defendants. It is also not unfairly prejudicial. To be sure, evidence of W.W.'s obvious medical crisis, including the testimony of those inmates and officers who were forced to witness it; his repeated, evidently painful, and completely preventable injuries; and his needless death

alone on a cell floor is disturbing.  But where such evidence is *relevant*, the Fourth Circuit has "found the admission of [even] gruesome and shocking [evidence, *i.e.*,] photographs not to be unfairly prejudicial."  *Bullis*, 139 F.3d at 893 (collecting cases).  Evidence that is damaging to a defendant's case is not, for that reason alone, unfairly prejudicial; "[i]ndeed, evidence that is highly probative invariably will be prejudicial to the defense."  *Id.* (brackets and internal quotation marks omitted).  Where, as here, evidence is prejudicial only in the sense of tending to show the defendants' guilt, it is not unfairly prejudicial, let alone so unfairly prejudicial that it should be excluded despite its high probative value.  *See* Fed. R. Evid. 403 (authorizing the exclusion of relevant evidence only "if its probative value is substantially outweighed by a danger" of, *inter alia*, unfair prejudice).

Carried to its logical conclusion, the defendants' suggested approach would also, as explained above, establish perverse incentives by rewarding defendants whose victims die out of sight and out of mind.  Further, exclusion, rather than inclusion, of this highly probative evidence is likely to confuse the issues and mislead the fact-finders.  The jury is entitled to know the full story of W.W.'s medical crisis, the defendants' opportunities to intervene and failure to do so, and the results of those failures.  "[B]eyond the power of conventional evidence to support allegations and give life to the moral underpinnings of law's claims, there lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be."  *Old Chief*, 519 U.S. 172 at 188.  The challenged evidence is as essential to the story of the case as it is to the elements of the charged offenses.  It poses no risk of unfair prejudice, let alone any risk that outweighs its high probative value.

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court deny defendant Covington's motion to exclude evidence related to W.W.'s time in suicide watch, as joined by defendant Farley. Such evidence is directly relevant to elements of the charged offenses and is thus prejudicial only in the sense of suggesting that the defendant is guilty of the charged conduct.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
Thomas A. Garnett
Virginia Bar No. 86054
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23229
Telephone:   (804) 819-5400
Facsimile:   (804) 771-2316
Email:  Thomas.A.Garnett@usdoj.gov

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL

/s/ Kathryn E. Gilbert
Kathryn E. Gilbert
Special Litigation Counsel
Matthew Tannenbaum
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
202-616-2430 phone
202-514-6588 fax
kathryn.gilbert@usdoj.gov