IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 3:23cr68-2 (RCY) |
| | ) | |
| TONYA FARLEY, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Tonya Farley's ("the Defendant" or "Ms. Farley") Motion to Dismiss Count 2 for Due Process Violation of Fair Warning Rights ("Count 2 Motion to Dismiss"), ECF No. 55, and Motion to Dismiss Count 4 for Due Process Vagueness ("Count 4 Motion to Dismiss"), ECF No. 56. As the names suggest, the Defendant seeks dismissal of both counts on due process grounds. *See generally* Count 2 Mot. Dismiss; Count 4 Mot. Dismiss. For the reasons stated below, the Court will deny both motions.

**I. FACTUAL BACKGROUND**

Defendant Tonya Farley was a nurse with the federal Bureau of Prisons ("BOP"). *See, e.g.*, Count 2 Mot. Dismiss 3, ECF No. 55; Gov't's Count 2 Resp. 1, ECF No. 64. The morning of January 9, 2021, an inmate ("W.W.") at the facility to which the Defendant was assigned began acting erratically, exhibiting symptoms of an alleged neurological crisis and/or suffering the effects of being under the influence of some unknown substance. *See* Count 2 Mot. Dismiss 3; Gov't's Count 2 Resp. 1. The Government alleges that W.W. was unable to stand or walk without falling, and he fell repeatedly over the course of January 9. *See* Gov't's Count 2 Resp. 1–2. Further, the Government asserts that Ms. Farley admitted, in a voluntary interview, her knowledge (1) of W.W's strange activity, (2) that W.W. had fallen, and (3) that W.W. had urinated on himself. *See id.* at 2.

On the evening of January 9, "Ms. Farley had [W.W.] brought to the medical unit for further assessment and evaluation," and she examined W.W. *See* Count 2 Mot. Dismiss 3; Gov't's Count 2 Resp. 2. Ms. Farley alleges that she "did not notice any *serious* head injury" to W.W., instead "just an abrasion on his head." *See* Count 2. Mot. Dismiss 3 (emphasis added). Ms. Farley and the Government dispute whether Ms. Farley contacted the doctor about W.W.'s injury. *Compare id.* ("[A]s she did with every inmate who may present a medical issue, she called the doctor[.]"), *with* Gov't's Count 2 Resp. 2 ("According to the on-call physician and telephone records, however, defendant Farley did not notify a physician.").

Ms. Farley ran W.W.'s vitals and completed an assessment as to W.W.'s condition. *See* Count 2 Mot. Dismiss 3; Gov't's Count 2 Resp. 2. Ms. Farley's report from that encounter documented that W.W. (1) had fallen; (2) had an abrasion on his head; (3) exhibited abnormal vital signs; (4) could not walk normally; (5) was slurring his speech; and (6) had dilated pupils. *See* Gov't's Count 2 Resp. 2; Gov't's Count 4 Resp. 2, ECF No. 65. The report further stated that (1) W.W. exhibited no signs or symptoms of "acute distress;" (2) W.W. "verbalize[d] understanding" of his medical care; and (3) Ms. Farley consulted with a physician regarding W.W.'s care. *See* Superseding Indictment 4, ECF No. 34; Gov't's Count 4 Resp. 2. The Indictment alleges that these three statements were false. Superseding Indictment 4; *see* Gov't's Count 4 Resp. 2. The Government further alleges that Ms. Farley admitted in a voluntary interview that (1) her report falsely indicated that W.W. verbalized his understanding of his encounter—in fact, W.W. could not talk and did not appear to understand what was happening to him; (2) the symptoms she observed and documented (including that W.W. could not speak, had a high respiration rate, and appeared disoriented) could have constituted medical distress; (3) that W.W. should have been sent to the hospital; and (4) if evidence showed that she did not in fact talk with a physician about W.W., that part of her report was also false. *See* Gov't's Count 4 Resp. 2.

Ms. Farley left FCI Petersburg during the evening hours of January 9. *See* Count 2 Mot. Dismiss 3. Over the course of the night, W.W. fell repeatedly, culminating in his death on January 10. *See* Gov't's Count 2 Resp. 2; *see also* Count 2 Mot. Dismiss 3.

## II. PROCEDURAL HISTORY

Ms. Farley was indicted on August 1, 2023, on three counts: (1) Count Two, willfully violating the constitutional rights of inmate W.W. by demonstrating deliberate indifference to his serious medical needs while acting under color of law as a BOP official, in violation of 18 U.S.C. § 242; (2) Count Four, writing a false report about her medical assessment and treatment of W.W., in violation of U.S.C. § 1519; and (3) Count Five, knowingly and willfully making false statements to a Special Agent of the Department of Justice ("DOJ"), Office of the Inspector General, as to material facts in relation to a matter within the jurisdiction of the DOJ, in violation of 18 U.S.C. § 1001. Superseding Indictment 3–5, ECF No. 34. Ms. Farley is one of three defendants named in the Superseding Indictment. *See id.* at 1.

On August 31, 2023, Ms. Farley filed the instant motions to dismiss Counts Two and Four, ECF Nos. 55, 56. The Government filed its responses in opposition to the respective motions on September 14, 2023, ECF Nos. 64, 65. On September 29, 2023, Ms. Farley filed her respective replies to the Government's responses, ECF Nos. 83, 84.

## III. LEGAL STANDARD

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). The Defendant here requests that the Court dismiss two of the counts in the indictment against her. Counts in an indictment may be dismissed if they are premised on an unconstitutional statute or an unconstitutional application of a statute. *Cf.* Fed. R. Crim. P.

12(b)(3)(B) (permitting a defendant to, before trial, file a motion alleging a "defect in the indictment").

### IV. DISCUSSION

**A. Count Two**

The Defendant moves to dismiss Count Two because, in her view, "[n]othing in [18 U.S.C. § 242] provides fair warning that a nurse or any other medical provider will be subject to punishment in a correctional setting for willful deliberate indifference to the serious medical needs of a prisoner." Count 2 Mot. Dismiss 2, ECF No. 55. Thus, she contends that this prosecution deprives her of due process. *See id.* at 1. The Court disagrees.

In pertinent part, 18 U.S.C. § 242[1] prohibits someone, acting "under the color of any law," from "willfully subject[ing] any person . . . to the deprivation of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States[.]" 18 U.S.C. § 242. "[I]f bodily injury results from the acts committed in violation of this section," then the defendant, if found guilty, "shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death." *Id.* The statute creates no substantive rights; instead, § 242 allows the government to prosecute the deprivation of rights that have already been "made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting

---

[1] In full, § 242 reads:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

4

them." *Screws v. United States*, 325 U.S. 91, 104 (1945). The right at issue in this matter is an inmate's right to be free from deliberate indifference to a serious medical need under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.").

Due process requires that a criminal statute give fair warning of conduct that it prohibits. *See, e.g.*, *Bouie v. City of Columbia*, 378 U.S. 347, 350 (1964). The principle underpinning the fair warning requirement is "that no [person] shall be held criminally responsible for conduct which he [or she] could not reasonably understand to be proscribed." *United States v. Lanier*, 520 U.S. 259, 265 (1997). There are "three manifestations" of the fair warning requirement:

> First, the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Second . . . the canon of strict construction of criminal statutes . . . ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. Third . . . due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.

*Id.* at 266 (internal citations and quotation marks omitted). Ultimately, "the touchstone" of the fair warning requirement "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267.

The Defendant challenges her prosecution under the third fair warning "manifestation." She asserts that it was not "reasonably clear at the relevant time" that her conduct was criminal, because this prosecution is a "novel construction" of 18 U.S.C. § 242. Count 2 Mot. Dismiss 5, 8.

Initially, the Defendant asserted that this case is "the first prosecution of its kind" because "no nurse or other medical professional has ever been prosecuted under 18 U.S.C. § 242 since the statute's inception generations ago." *Id.* at 8. But as the Government noted in its response, that assertion is untrue. *See, e.g.*, *United States v. Yates*, No. 5:20-cr-00075 (S.D. W. Va. Sept. 20,

2020) (convicting former doctor of osteopathic medicine at Veterans Affairs Medical Center under § 242 for violating civil rights of patients by sexually assaulting them); *United States v. Wiggins*, No. 2:18-cr-20065 (W.D. Tenn. July 31, 2018) (convicting former nurse assistant at Veterans Affairs Medical Center under § 242 for violating civil rights of patient by physically assaulting him). The Government even pointed to a § 242 prosecution of a manager at a state health department-affiliated residential facility for failure to provide adequate medical care. *See United States v. Paulo*, No. 2:19-cr-4090-1 (W.D. Mo. 2019) (professional manager at facility offering individualized support living to developmentally disabled persons convicted under § 242 for exhibiting deliberate indifference to resident's serious medical need which resulted in resident's death).

Ostensibly in response to this, the Defendant narrowed her assertion in her Reply to one that no "nurse—or any medical professional—has been prosecuted for a criminal offense for failure to provide proper medical care." Count 2 Reply 1, ECF No. 83. However, even accepting *arguendo* that this narrowed proposition is accurate, the Court is not persuaded that on this basis alone, Count Two should be dismissed. The Supreme Court has never required there to be a prosecution that predates and exactly mirrors the one at bar for a defendant to have had "fair warning" that their conduct comes within § 242's ambit. Quite the contrary, in fact—the Supreme Court "ha[s] upheld convictions under . . . § 242 despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Lanier*, 520 U.S. at 269; *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("Our opinion in *Lanier* thus makes clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances.").

6

Taking heed of *Lanier*, the Court gives credit to the fact that, in addition to the various § 242 prosecutions of other medical professionals and workers, the Court has identified § 242 prosecutions of other prison officials (though not prison *nurses*) for deliberate indifference to inmates' serious medical needs (with convictions affirmed by the federal courts of appeals, at that). *See, e.g.*, *United States v. Higgins*, No. 6:18-cv-10, 2021 WL 342565, at *1 (W.D. Va. Jan. 31, 2021)[2] (finding jail superintendent guilty under § 242 for "depriv[ing] [inmate] of his Constitutional rights by acting with deliberate indifference to his medical needs"), *aff'd*, No. 21-4245, 2022 WL 17592125 (4th Cir. Dec. 13, 2022); *United States v. Pendergrass*, No. 1:14-cr-329 (S.D.N.Y. June 18, 2015), *aff'd*, 648 F. App'x 29 (2d Cir. 2016) (affirming conviction of corrections officer under § 242 for his deliberate indifference to an inmate's serious medical needs); *see also United States v. Howell*, No. 6:15-cr-42-2, 2018 WL 1053569 (E.D. Ky. Feb. 23, 2018), *aff'd*, *United States v. Hickman*, 766 F. App'x 240 (6th Cir. 2019) (affirming finding that supervisory deputy jailer was guilty of deprivation of rights under color of law under § 242 for deliberate indifference to pre-trial detainee's medical needs); *United States v. Gray*, No. 3:09-cr-182, 2011 WL 198006, at *2 (N.D. Ohio Jan. 20, 2011) (denying of motion for acquittal where corrections officer was convicted under § 242 for depriving the rights of an inmate under color of law by acting with deliberate indifference to inmate's serious medical needs), *aff'd*, 692 F.3d 514 (6th Cir. 2012). Given the § 242 prosecutions of other prison workers for the exact same constitutional violation as those alleged here, it is difficult to accept that there was no "reasonable warning that the [alleged] conduct . . . at issue violated constitutional rights" and, by extension, could provide a basis for a § 242 prosecution. *Lanier*, 520 U.S. at 269.

---

[2] The district court in *Higgins* handed down its verdict after January 9, 2021, but the prosecution began well before January 9, 2021, as the defendant was indicted in August of 2018, and the bench trial took place in August of 2020. *See* Docket, *United States v. Higgins*, No. 6:18-cv-10 (W.D. Va. 2018), 2021 WL 342565.

7

The ample caselaw from the analogous 42 U.S.C. § 1983 context confirms the Court's inclination that there was fair warning to Defendant Farley here. "Because 18 U.S.C. § 242 is merely the criminal analog of 42 U.S.C. § 1983, and because Congress intended both statutes to apply similarly in similar situations, . . . civil precedents are equally persuasive in this criminal context." *United States v. Cobb*, 905 F.2d 784, 788 n.6 (4th Cir. 1990); *see also Lanier*, 520 U.S. at 270–71 (explaining that § 242's "fair warning" standard is the same as the "clearly established" qualified immunity standard applicable in § 1983 cases).[3] It is well-established that a government official who abuses their authority acts "under color of law." *See West v. Atkins*, 487 U.S. 42, 49–50 (1988) ("It is firmly established that a defendant . . . acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). Likewise, "[i]t is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted); *see also, e.g.*, *Estelle*, 429 U.S. at 104 ("[E]lementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. . . . [D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. This is true whether the indifference is manifested *by prison doctors in their response to the prisoner's needs* . . . ." (emphasis added) (internal citation omitted)). And that debate has *long* been over. As the Fourth

---

[3] The Defendant argues that this prosecution is improper because "[d]eliberate indifference, as it applies to medical professionals, has always been treated in the civil realm, and not as a criminal violation." Count 2 Reply 2. But because there can be fair notice in § 242 cases "despite notable factual distinctions between the precedents relied on and the cases then before [a] [c]ourt," *Lanier*, 520 U.S. at 269, and "civil precedents are equally persuasive in this criminal context" for establishing fair warning, *Cobb*, 905 F.2d at 788 n.6, this argument cannot carry the day for the Defendant.

Circuit put it in 2008 in *Iko v. Shreve*, "[t]he right to adequate medical care had already been carefully circumscribed in the caselaw, with its objective and subjective components spelled out to ensure that only the most wanton indifference goes punished." 535 F.3d 225, 243 n.12 (4th Cir. 2008). For that reason, the *Iko* court found that the correctional officers there "had *fair warning* that their conduct was unconstitutional." *Id.* (emphasis added) (internal quotation marks omitted). If there was "fair warning" for those prison officials about the unconstitutionality of their failure to provide adequate medical care to an inmate in 2008, surely there was fair warning for Defendant Farley about the unconstitutionality of the (alleged) same.[4]

The Defendant refers the Court to comments made by the District of Minnesota in *United States v. Thao*, 2022 WL 1468466 (D. Minn. May 10, 2022). There, the district court noted "the potentially dubious constitutionality of the charge [under § 242] brought against Defendants for failure to render medical aid," *id.* *2, under facts that Defendant Farley characterizes as "far more egregious than those presented here," Count 2 Mot. Dismiss 7. Yet, Defendant Farley fails to note that the district court eventually did consider a fair warning challenge to § 242, and the court found that the challenge "fail[ed] on the merits." *See United States v. Thao*, 2022 WL 2063664, at *1–2 (D. Minn. June 8, 2022). Citing to the Fourth Circuit's decision in *United States v. Cobb*, the district court analogized the charge to binding § 1983 precedents. *See id.* (citing *Cobb*, 905 F.2d

---

[4] Further, in numerous cases (at differing procedural postures), the Fourth Circuit and courts within the Fourth Circuit have found that prison nurses and other correctional healthcare providers can violate an inmate's constitutional rights by acting with deliberate indifference toward the inmates' serious medical needs. *See, e.g.*, *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (reversing district court's dismissal of inmate's claim against correctional healthcare providers who had been deliberately indifferent to her serious medical need by refusing to evaluate her for surgery); *Riddick v. Watson*, 503 F. Supp. 3d 399, 418–21 (E.D. Va. 2020) (refusing to dismiss inmate's claim against on-duty guards and jail nurses who displayed deliberate indifference with respect to the inmate's serious medical need); *Sams v. Armor Corr. Health Servs., Inc.*, No. 3:19-cv-639, 2020 WL 5835310, at *9 (E.D. Va. Sept. 30, 2020) (denying jail nurse's motion to dismiss prison detainee's Eighth Amendment deliberate indifference claim); *Bost v. Wexford Health Sources, Inc.*, No. CV ELH-15-3278, 2018 WL 3539819, at *3 (D. Md. July 23, 2018) (denying correctional nurses' motion for summary judgment on Eighth Amendment deliberate indifference claim); *Nelson v. Hill*, No. 3:08-cv-603, 2010 WL 1005320, at *3 (E.D. Va. Mar. 17, 2010) (denying jail medical superintendent's motion to dismiss inmate's deliberate indifference claim); *Harris v. Virginia*, No. 3:07-cv-701, 2008 WL 4145923, at *5 (E.D. Va. Sept. 8, 2008) (denying jail nurse's motion to dismiss inmate's claim that she was deliberately indifferent to inmate's medical needs).

at 788 n.6). And finding that "deliberate indifference to medical needs has long been recognized as a constitutional tort of constitutional magnitude for purposes of a claim under 42 U.S.C. § 1983," the court held that decisions reinforcing that constitutional ruling "gave Defendants notice that they could be subject to criminal liability [under § 242] if they failed to render medial aid in a manner that was deliberately indifferent to a detainee's serious medical needs." *Id.* at *2. So, *Thao* does not support—and in fact, directly undermines—Defendant Farley's position.

The Defendant also forwards policy arguments. She argues that "[m]edical professionals around the country go to work every day in hospitals, offices, military bases, and schools without any expectation that" failing to provide medical needs "will land them in prison." Count 2 Reply 3. She argues that this prosecution holds her, "and other nurses who serve inmates in jails and prisons, to a completely different standard, than any other nurse in the country who cares for the rest of the population." *Id.* The Defendant cites no legal authority to accompany these arguments. *See id.* Thus, "[t]hese policy arguments do not change the Court's legal analysis."[5] *United States v. Shaw*, No. 22-cr-00105, 2022 WL 17342199, at *4 (N.D. Cal. Nov. 30, 2022) (denying a fair warning challenge to § 242 brought by an athletic trainer by analogizing to § 1983 cases).

As the Supreme Court summarized in *Lanier*, "as with civil liability under § 1983 or *Bivens*, all that can usefully be said about criminal liability under § 242 is that it may be imposed for deprivation of a constitutional right if, but only if, in the light of pre-existing law the unlawfulness [under the Constitution is] apparent." *Lanier*, 520 U.S. at 271–72 (alteration in original) (internal quotation marks omitted). There have been sufficiently analogous prosecutions

---

[5] Even if the Court were to engage with the argument, the theoretical justification (and the factual explanation) for any alleged different treatment of medical professionals in the prison and detention setting is that it is uniquely the Eighth Amendment right of the *inmate* or detainee to be free from deliberate indifference to their medical needs, a right which stems from the government's obligation to provide medical care for those whom it is punishing by incarceration. *See Estelle*, 429 U.S. at 104 ("[I]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." (internal quotation marks omitted)).

under § 242 predating this one. And there is abundant, clear caselaw from the § 1983 context reaffirming that deliberate indifference to an inmate's medical needs (even by prison doctors) violates constitutional rights. *See, e.g.*, *Estelle*, 429 U.S. at 104 ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. This is true whether the indifference is manifested *by prison doctors in their response to the prisoner's needs . . . .*" (emphasis added) (internal citation omitted)). In line with how binding Supreme Court and Fourth Circuit caselaw has circumscribed the fair warning inquiry, the Court concludes that the prior prosecutions and court decisions gave Defendant Farley fair warning that the charged conduct was unlawful and could result in a criminal prosecution. Even if the Defendant is correct that, when distilled to the highest level of specificity, the action in question in this case has not previously been held unlawful in a § 242 prosecution, the Court finds that the "general constitutional rule already identified in the decisional law . . . appl[ies] with obvious clarity to the specific conduct in question" here. *Lanier*, 520 U.S. at 271; *see also id.* at 267 ("When broad constitutional requirements have been made specific by the text or settled interpretations, willful violators certainly are in no position to say that they had no adequate advance notice that they would be visited with punishment." (internal quotation marks omitted)). That is all that due process requires.

The Motion to Dismiss Count 2 for Due Process Violation of Fair Warning Rights will accordingly be denied.[6]

## B. Count Four

The Defendant argues that "[a] person of ordinary intelligence would have no reasonable

---

[6] In her Motion, the Defendant also argues that she was at most negligent in her care of the victim (and ostensibly thus not deliberately indifferent to the victim's medical needs). *See* Count 2 Mot. Dismiss 2 ("The facts of this case can only be said to rise to a level of simple negligence, if there was any negligence at all[.]"). To the extent that such factual disagreements exist, those are properly resolved at trial by the finder of fact.

expectation of what is and what is not prohibited" under 18 U.S.C. § 1519, and thus prosecuting her under that statute violates due process. Count 4 Mot. Dismiss 4, ECF No. 56. On this challenge too, the Court does not agree.

> Title 18 U.S.C. § 1519, in full, provides:
>
> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

"[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926). "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

The thrust of the Defendant's vagueness challenge is that § 1519's "in relation to or contemplation of" language means that § 1519 must "only prohibit the intentional interference with or obstruction of an investigation that the defendant actually expects to occur in the future;" otherwise, § 1519 is unconstitutionally vague. Count 4 Mot. Dismiss 5; *see also* Count 4 Reply 2–3, ECF No. 84. In other words, the Defendant argues that § 1519 requires a mens rea nexus between the obstructive act and the obstructed matter (here, an investigation). Building on this premise, the Defendant insists that § 1519 must be unconstitutional as applied to her because she had "no objective knowledge of an ongoing or contemplated federal investigation" at the time of the alleged obstruction—in part because the investigation happened around two years after the

12

alleged obstruction.[7] Count 4 Mot. Dismiss 5; *see id.* at 2. As the Defendant puts it, this interpretative argument "forms the very basis for th[is] vagueness challenge[.]" Count 4 Reply 2.

The Court disagrees with the Defendant on both scores. First, § 1519 does not contain the sort of nexus requirement that the Defendant reads into it. The "in contemplation of" prong does not, as the Defendant contends, require that (1) at the time of the alleged obstruction, the Defendant must have had knowledge of a present investigation or knowledge that a future one would likely occur, and then (2) armed with that knowledge, the Defendant acted with the intent to obstruct that specific present or future investigation. To the contrary, it is well-established that "§ 1519 does not require the existence or likelihood of a federal investigation." *United States v. Gray*, 642 F.3d 371, 379 (2d Cir. 2011); *see also United States v. Giampietro*, 475 F. Supp. 3d 779, 791 (M.D. Tenn. 2020) ("[C]riminal liability [under Section 1915] is very broad and it does not [even] require the existence or likelihood of a federal investigation." (last two alterations in original) (internal citations and quotation marks omitted)); *United States v. Krug*, 198 F. Supp. 3d 235, 245 (W.D.N.Y. 2016) ("Underscoring its broad sweep, § 1519 does not require knowledge of a pending federal investigation or proceeding, nor does § 1519 even require the existence or likelihood of a federal investigation." (internal quotation marks omitted)); *United States v. Yihao Pu*, 15 F. Supp. 3d 846, 853 (N.D. Ill. 2014) ("Section 1519, however, does not require the existence of or likelihood of a federal investigation." (internal quotation marks omitted)). And in that same vein,

---

[7] At another point, the Defendant also appears to rope into this argument a factual challenge, arguing that she "could not possibly have known that *the simple act of completing a form at work* could constitute a federal criminal act, when there was no legitimate expectation that any investigation or administrative proceeding was forthcoming." Count 4 Mot. Dismiss 3–4 (emphasis added). However, the Defendant is charged with knowingly making false entries on a form, not simply "completing" one. To the extent that her argument is that the statute would be unconstitutionally vague as applying to someone who simply completed a form, that is merely "speculation about the notice furnished to . . . a hypothetical defendant [which] does not render § 1519 clearly unconstitutionally vague" as applied to her. *United States v. McRae*, 702 F.3d 806, 838 (5th Cir. 2012) (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 21 (2010)). And to the extent the Defendant wishes to argue that she did not, in fact, make knowing false entries on the form, this vagueness challenge is not the proper vehicle to make that argument. That is an argument to be made to the finder of fact at trial.

the statute does not require the government to prove that the Defendant intended to obstruct or impede any specific investigation (present or future). *See United States v. Moyer*, 674 F.3d 192, 210 (3d Cir. 2012) ("[The government] was not required to prove that [Defendant] intended to obstruct or impede a specific federal investigation."); *see also United States v. Benjamin*, No. 1:21-cr-706, 2022 WL 17417038, at *18 (S.D.N.Y. Dec. 5, 2022) (citing *United States v. Scott*, 979 F.3d 986, 992 (2d. Cir. 2020)) ("[Section] 1519 does not require a nexus between the defendant's obstructive act and a specific pending or reasonably foreseeable proceeding[.] . . . [Section] 1519 does not require a concrete proceeding to be on the horizon."). Nor was the timing between obstructive act and obstructed investigation ever intended to be a bar to an "in contemplation" § 1519 prosecution. *Moyer*, 674 F.3d at 210 ("To ensure that the statute is applied 'broadly,' criminal liability . . . 'extends to acts done in contemplation of such federal matters, so that the timing of the act in relation to the beginning of the matter or investigation is . . . not a bar to prosecution.'" (quoting S. Rep. No. 107–146, at 13 (2002))). Rather than requiring any actual knowledge of any specific future investigation, or even knowledge that one is likely to occur, "[c]ourts considering the question have consistently held that the belief that a federal investigation directed at the defendant's conduct *might begin at some point in the future* satisfies the 'in contemplation' prong."[8] *United States v. Kernell*, 667 F.3d 746, 755 (6th Cir. 2012) (emphasis added); *see, e.g.*, *Yihao Pu*, 15 F. Supp. 3d at 853 ("Uppal argues that the Superseding Indictment fails to provide a nexus between Uppal's conduct and the pending investigation or proceeding that he intended to obstruct. . . . [However,] the plain meaning of § 1519 does not require the government to prove a nexus between a defendant's conduct and an official proceeding. [T]he belief that a federal investigation directed at the defendant's conduct might begin at some point in

---

[8] The Court notes, without adopting, that one district court in this circuit has gone so far as to hold that "a foreseeable investigation is not a required element of § 1519" at all. *United States v. Cowden*, No. 5:16-cr-24, 2016 WL 5372841, at *3 (N.D.W. Va. Sept. 26, 2016).

the future satisfies the 'in contemplation' prong [of § 1519]. The Court declines to read in a limitation that conflicts with the plain meaning of § 1519." (last two alterations in original) (internal citation and quotation marks omitted)).[9]

Second, when properly read, § 1519 is not unconstitutionally vague as it applies to Defendant Farley. The Defendant does not argue that she lacked notice that the conduct alleged in this case—knowingly making false entries on a form following W.W.'s death—on its own was unlawful. Instead, her argument is that she had no notice that the alleged conduct would be unlawful because she did not know that an investigation would occur. *See* Count 4 Mot. Dismiss 3–4. Stated differently, she is arguing that § 1519's mens rea requirement is impermissibly vague. But this is a specific intent crime. The government will have to prove that she specifically intended to impede or influence a federal matter. *See, e.g., United States v. Stevens*, 771 F. Supp. 2d 556, 561–62 (D. Md. 2011); *Moyer*, 674 F.3d at 211–12; *Kernell*, 667 F.3d at 752–53. "When construed as requiring proof of a specific intent to impede, obstruct, or influence a federal matter, § 1519 provides sufficient notice of what conduct is prohibited, and is not subject to arbitrary or discriminatory enforcement. Accordingly, Section 1519 is not unconstitutionally vague[.]" *Stevens*, 771 F. Supp. 2d at 562; *see Yihao Pu*, 15 F. Supp. 3d at 854 ("The specific intent element of the offense extends to prosecutions based on contemplated investigations or matters and therefore avoids the vagueness concerns that § 1519 overreaches in criminalizing innocent conduct."); *see also, e.g., Kernell*, 667 F.3d at 752–53; *Moyer*, 674 F.3d at 211–12; *United States v. Yielding*, 657 F.3d 688, 715 (8th Cir. 2011).

The Defendant also argues that § 1519 fails to give adequate notice of the conduct prohibited because it does not require a "corrupt" intent as other federal obstruction statutes do.

---

[9] To the extent that the Defendant contends that, as a factual matter, she did not have any belief that an investigation into her conduct might occur at some point in the future (a contention the Government strongly disputes), that is something that, if pertinent to the case, must be left for the finder of fact to decide.

*See* Count 4 Mot. Dismiss 4. *Compare* 18 U.S.C. § 1519, *with* 18 U.S.C. § 1512(b). The Defendant does not explain how this makes § 1519 vague *as it applies to her*. But "[i]n any event, due process does not require Congress to draft all obstruction of justice statutes uniformly." *United States v. McRae*, 702 F.3d 806, 838 (5th Cir. 2012). So, the Court rejects this argument as well.

To be sure, § 1519 has an "intentionally broad[10] reach[.]" *United States v. Diana Shipping Servs., S.A.*, 985 F. Supp. 2d 719, 729 (E.D. Va. 2013); *see also, e.g., Moyer*, 674 F.3d at 210 (explaining that Congress added the "in contemplation" language to § 1519 because Congress intended to "extend[]" the statute's reach and "ensure that the statute is applied 'broadly'" (quoting S. Rep. No. 107–146, at 13 (2002))). But broad does not necessarily equal unconstitutionally vague. *See Gift Surplus, LLC v. N. Carolina ex rel. Cooper*, 605 F. Supp. 3d 711, 731 (M.D.N.C. 2022); *United States v. Fitzgerald*, 514 F. Supp. 3d 721, 741 (D. Md. 2021). Accordingly, the Court holds that § 1519 is not unconstitutionally vague as it pertains to Defendant Farley. Her Motion to Dismiss Count 4 for Due Process Vagueness will therefore be denied.

## IV. CONCLUSION

For the reasons detailed above, the Court will deny Defendant's Motion to Dismiss Count 2 for Due Process Violation of Fair Warning Rights and Motion to Dismiss Count 4 for Due Process Vagueness.

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: December 7, 2023

---

[10] At one point in her Reply, the Defendant, for the first time, throws in a contention that, if there is no nexus requirement like the one she reads into § 1519, then the statute must be "overbroad." Count 4 Reply 2. The Defendant does not raise an independent constitutional overbreadth challenge in her Motion to Dismiss, so the Court will not make one up for her.