IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 3:23CR68-2 (RCY) |
| | ) | |
| TONYA FARLEY, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This prosecution arose following the death of an inmate ("W.W.") in federal prison.  At the conclusion of an eleven-day trial, the jury found Defendant Tonya Farley and one of her two co-defendants guilty of various charged offenses.  The matter is presently before the Court on Ms. Farley's Motion for Judgment of Acquittal and New Trial (ECF No. 349).  Ms. Farley seeks a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the Government did not present sufficient evidence for a jury to find her guilty of Count Five (18 U.S.C. § 1001), and that the Court should grant a new trial based on the Government's egregious conduct prior to and during the trial.  For the reasons stated below, the Court denies the Motion.[1]

## I.  RELEVANT BACKGROUND

On August 1, 2023, the grand jury issued a Superseding Indictment specifically charging Ms. Farley with one count of deprivation of rights under color of law in violation of 18 U.S.C. § 242 (Count One), one count of making a false report in violation of 18 U.S.C. § 1519 (Count Four), and one count of making false statements in violation of 18 U.S.C. § 1001 (Count Five). Superseding Indictment, ECF No. 34.  Ms. Farley proceeded to trial on December 9, 2024,

---

[1] On May 5, 2025, the Court entered an Order denying the Motion and promising an opinion to follow. Order, ECF No. 398. This Memorandum Opinion fulfills that promise.

alongside co-Defendants Shronda Covington and Yolanda Blackwell. During trial, Ms. Farley moved for a judgment of acquittal after the prosecutor's case-in-chief and at the close of evidence. The Court denied both motions. On December 21, 2024, the jury returned a verdict finding Ms. Farley guilty on Count Five, making false statements in violation of 18 U.S.C. § 1001, but acquitting her on Counts One and Four, deprivation of rights under color of law and making a false report, respectively. Verdict Form, ECF No. 313.

On March 24, 2025, Ms. Farley timely filed her Motion for Judgement of Acquittal and New Trial ("Mot. New Trial"). Mot. New Trial, ECF No. 349. Therein, Ms. Farley also adopted the arguments articulated in co-Defendant Covington's concurrently filed Motions for Acquittal and New Trial, ECF Nos. 345, 346. The Government responded to Ms. Farley's Motion on April 7, 2025, ECF No. 356, and Ms. Farley replied on April 14, 2025. ECF No. 374. At the direction of the Court, the Government filed a Sur-Reply on April 21, 2025.[2] ECF No. 377.

## II. STANDARD OF REVIEW

### A. Motion for Acquittal under Federal Rule of Criminal Procedure 29 ("Rule 29")

Federal Rule of Criminal Procedure 29 ("Rule 29") provides in relevant part that, "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). A court must "sustain a guilty verdict if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by 'substantial evidence.'" *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a

---

[2] Without seeking leave of Court, Ms. Farley responded to the Government's Sur-Reply in her Response to Government Sentencing Position, ECF No. 393. The Court did not consider the arguments therein because Ms. Farley failed to obtain leave of Court. E.D. Va. Loc. Crim. R. 47(F)(1) ("No further briefs or written communications may be filed without first obtaining leave of Court.").

reasonable doubt." *Id.* (quoting *Burgos*, 94 F.3d at 862). A court should consider "circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). "[C]ircumstantial evidence is not inherently less valuable or less probative than direct evidence and may alone support a guilty verdict." *United States v. Martin*, 523 F.3d 281, 289 (4th Cir. 2008) (internal quotation marks and citation omitted).

**B. Motion for a New Trial under Federal Rule of Criminal Procedure 33 ("Rule 33")**

Federal Rule of Criminal Procedure 33 allows a court, upon the defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A court is not required to view the "evidence in light most favorable to the government," thus the court's authority is "much broader than when it is deciding a motion to acquit." *United States v. Rafiekian*, 991 F.3d 529, 549 (4th Cir. 2021) (quoting *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985)). "Nevertheless, the 'standard for jettisoning a jury verdict in favor of a new trial' remains 'demanding,' and courts must exercise their discretion to do so 'sparingly.'" *Id.* (quoting *United States v. Millender*, 970 F.3d 523, 531–32 (4th Cir. 2020)); *see also Millender*, 970 F.3d at 531 ("A new trial is warranted only '[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment.'" (quoting *Arrington*, 757 F.2d at 1485).

### III. DISCUSSION

Ms. Farley articulates three grounds for acquittal and four arguments for a new trial, ultimately concluding with an argument that the cumulative prejudicial effect of the complained-of events necessitates a new trial. The Court will first address acquittal, before turning to consider whether a new trial is warranted.

## A. Rule 29 Acquittal Analysis

The overarching question before the Court is whether adequate and sufficient evidence was admitted at trial, such that a reasonable jury could find beyond a reasonable doubt that Ms. Farley violated 18 U.S.C. § 1001, i.e., that she "knowingly and willfully made false, fictitious, and fraudulent statements and representations to a Special Agent of the Department of Justice (DOJ), Office of the Inspector General (OIG), as to material facts in relation to a matter within the jurisdiction of the DOJ, an agency of the United States."  Superseding Indictment 5, ECF No. 34; *see also* 18 U.S.C. § 1001(a)(2).

Ms. Farley's three arguments in support of acquittal are as follows.  First, that the Court erred when it failed to grant Ms. Farley's first Rule 29 motion with respect to the aspect of Count Five predicated on Ms. Farley's alleged statement to the Government "that the on-call psychologist told her that the psychologist believed W.W. was malingering on January 9, 2021," and that due to this error, "a portion of the false statement charge was presented to the jury improvidently."  Mot. New Trial 3–6.  Second, that the Court abused its discretion when it failed to provide Ms. Farley's proposed good faith instruction.  *Id.* at 6.  And third, that the false statements charged in Count Five relating to whether Ms. Farley called Dr. Young were not material and thus could not properly form the basis for a § 1001 conviction.  *Id.* at 6–7.

In response, the Government argues that the Court must consider the entirety of the record and that there is sufficient evidence to support a conviction, to the extent such conviction was predicated on the false statement about "malingering."  Resp. Opp'n 5–6.  The Government also argues that the Court properly instructed the jury, and that Ms. Farley's false statements were indeed material.  Resp. Opp'n Covington Mot. Acquit. 18 n.7 (addressing the good faith instruction); Resp. Opp'n 6–7.

4

For the reasons explained below, the Court agrees with the Government.

1. Evidence That Ms. Farley Made a False, Fictitious, or Fraudulent Statement to the Government About Malingering

Ms. Farley's first argument centers around whether there was sufficient evidence for a jury to find that Ms. Farley "falsely claimed that the on-call psychologist told her that the psychologist believed W.W. was malingering on January 9, 2021." Superseding Indictment 5, ECF No. 34; *see* Mot. New Trial 3–6.

"Convicted defendants who challenge the sufficiency of the evidence against them face 'a heavy burden.'" *United States v. Gallagher*, 90 F.4th 182, 190 (4th Cir. 2024). The Court views the evidence in the light most favorable to the prosecution and must "assume the jury resolved all credibility disputes or judgment calls in the government's favor." *Id.* (quoting *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)). The Court must uphold the jury's verdict so long as it is supported by "substantial evidence." *Id.* This evidence is not limited to "evidence presented during the government's case in chief." *Id.* at 189. "[A] reviewing court considering a sufficiency challenge must consider 'all the evidence considered by the jury, both admissible and inadmissible.'" *Id.* (quoting *United States v. Simpson*, 910 F.2d 154, 159 (4th Cir. 1990)). So long as the defendant "does not argue [s]he was coerced into presenting a defense," the Fourth Circuit adheres to the rule that "[b]y presenting evidence, [the defendant] abandoned any future argument [that] the government's case-in-chief was inadequate, and we consider the full trial record in assessing h[er] sufficiency challenge." *Id.* at 190.

Ms. Farley argues that the Government presented "no evidence" that Ms. Farley made false statements to the Government about malingering during her interview. Mot. New Trial 5. Therefore, Ms. Farley argues that the Court should have granted her Rule 29 motion as to that

specific statement.  *Id.*  Ms. Farley also contends that all of the statements on this subject are conflicting and thus insufficient to support a conviction.  Reply 1–2.

The Government contends it elicited evidence from Special Agent ("SA") Whitney, based upon which the jury "was entitled to infer" Ms. Farley made a false statement about Dr. Biber telling her that W.W. was a malingerer.  Resp. Opp'n 6 n.2.  More importantly, the Government contends that the Court must consider the entirety of the record at this procedural posture, including evidence presented by the Defendant.  *Id.* at 5–6.

Foremost, the Court agrees that its analysis is not limited to the evidence presented in the Government's case in chief.  *See Gallagher*, 90 F.4th at 189 ("[W]here a criminal defendant presents evidence after losing a mid-trial motion for judgment of acquittal, the mid-trial motion is deemed withdrawn and a reviewing court considers both sides' proof when faced with a post-trial sufficiency challenge.").  Indeed, Ms. Farley does not argue that she was "coerced into presenting a defense," therefore it is appropriate to consider the "full trial record" as Ms. Farley "abandoned any future argument [that] the government's case-in-chief was inadequate" by presenting evidence. *Id.* at 189–90.

Furthermore, the Court disagrees that the Government presented "no evidence" as to Ms. Farley's false statement concerning malingering.  First, the Government elicited testimony from Dr. Biber that she never told Ms. Farley that she believed W.W. was malingering.  *See e.g.*, Trial Tr. 1332:7–9, ECF No. 333.  The Government then solicited testimony from SA Whitney about her interview of Ms. Farley, at which time SA Whitney testified that, although she asked Ms. Farley about the nature of her consultation with the on-call psychologist, Ms. Farley did not bring up malingering "prior to reading [her clinical encounter] report," which did not occur until later in the interview.  *Id.* at 1432:10–1433:5; *cf. id.* at 1434:18–20 (transitioning to testimony recounting

Ms. Farley's statements after SA Whitney showed Ms. Farley her clinical encounter report).[3]  Most critically, the Government later extracted from Ms. Farley on cross-examination that she told SA Whitney that Dr. Biber told her that W.W. was malingering.  Trial Tr. 2599:24–2600:1, ECF No. 336 ("Q: You tell the agent that Dr. Biber tells you, Nurse Farley, he's malingering; isn't that right?  A: That's correct.  I do remember that.").  "[A]ssum[ing] the jury resolved all credibility disputes or judgment calls in the government's favor," a reasonable jury could find that Ms. Farley manufactured Dr. Biber's malingering comment after Ms. Farley reviewed her clinical encounter report, and that she conveyed this false statement to SA Whitney.  *Gallagher*, 90 F.4th at 190. Therefore, the Court finds, as it previously did in ruling on Ms. Farley's earlier Rule 29 motions, that there is substantial evidence to support a reasonable jury finding that Ms. Farley made a false statement.

The Court further rejects Ms. Farley's argument that because the Court should have granted Ms. Farley's first Rule 29 motion, the Court must now grant her instant motion, insofar as the malingering-statement aspect of Count Five should never have been presented to the jury and, because there was no special verdict form utilized on this count,[4] there is no way to know what false statement the jury based its conviction on.  As just described, however, there is substantial evidence to support Ms. Farley's § 1001 conviction even if the Court were to assume that the conviction was based on the malingering statement.  Because "[w]hen a jury returns a guilty verdict

---

[3] Although the Court agrees with the Government's concession that its questions to SA Whitney and her responsive testimony on this issue "w[ere] not crystalline," Resp. Opp'n 6 n.2, the Court also agrees that the jury was entitled to draw the logical negative inference from SA Whitney's testimony that, while Ms. Farley did not make a statement regarding malingering during the interview *prior* to being confronted with a copy of her clinical encounter report, she rather brought up malingering *after* being confronted with the report, when she was faced with various encounter notes that contradicted her answers to SA Whitney in the earlier portion of her interview.

[4] The Court observes that no Defendant requested a special verdict form for the false statement charges, nor did they object to the jury instruction explaining conjunctive charging, Instruction No. 54.  *See* Trial Tr. 2849:1–17 (final jury instruction conference, during which no party objected to any of the Court's final proposed Instructions numbered 51–55); Jury Instr. 54, ECF No. 317 at 61.

on an indictment charging several acts in the conjunctive, as [the superseding] indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Griffin v. United States*, 502 U.S. 46, 56–57 (1991) (quoting *Turner v. United States*, 396 U.S. 398, 420 (1970)). Thus, Ms. Farley's argument fails.

2. <u>Ms. Farley's Proposed Good Faith Jury Instruction</u>

Ms. Farley's next argument relates to whether the Court abused its discretion by failing to give Ms. Farley's proposed good faith jury instruction. She specifically argues that the Court's rejection of such a jury instruction impaired her defense. Mot. New Trial 6.

A district court's decision to not give an instruction requested by the criminal defendant "amounts to reversible error only if the proffered instruction: (1) was correct, (2) was not substantially covered by the charge that the district court actually gave to the jury, and (3) involved some point so important that the failure to give the instruction seriously impaired the defendant's defense." *United States v. Hager*, 721 F.3d 167, 184 (4th Cir. 2013). "An additional instruction on good faith [is] unnecessary," so long as the district court "gives adequate instructions on specific intent." *United States v. Fowler*, 932 F.2d 306, 317 (4th Cir. 1991); *see also United State v. Park*, 421 U.S. 658, 674–75 (1975) ("We review an entire charge to determine whether the court adequately instructed the jury on the elements of the offense and the accused's defenses.").

As the Government correctly points out, *see* Resp. Opp'n Covington Mot. Acquit 18 n.7 (addressing Ms. Farley's good faith instruction argument, since Defendant Covington adopted all of Ms. Farley's arguments regarding acquittal), the Court properly instructed the jury on the specific intent required for the § 1001 false statement charge. Jury Instr. 51, ECF No. 317 (defining the knowledge standard under § 1001); Jury Instr. 52 (defining the willfulness standard under § 1001). Not only does Ms. Farley fail to establish how her defense was impaired without the

8

requested good faith instruction, she also does not address the Fourth Circuit precedent that is inapposite to her position. *See Fowler*, 932 F.2d at 317 ("*Morissette*[5] does not require a good faith instruction such as the one [the defendant] sought."). Finding that *Fowler* is still good law, the Court finds that it properly instructed the jury and did not err by excluding the good faith instruction.

### 3. Materiality of Ms. Farley's False Statements About Calling Dr. Young

Lastly, Ms. Farley contests the materiality of the false statements charged in Count Five relating to whether she called Dr. Young. Mot. New Trial 6–7. Specifically, Ms. Farley contests the materiality of the following statements made to SA Whitney: (1) that Ms. Farley used a BOP telephone to contact the on-call physician, Dr. Young; (2) that she discussed W.W.'s medical symptoms and care with Dr. Young; (3) that she did not send W.W. to the hospital because Dr. Young did not authorize her to do so and because Dr. Young instead instructed Ms. Farley to call the on-call psychologist. *See id*. at 6–7; Superseding Indictment 5.

"A statement is material if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." *United States v. Smith*, 54 F.4th 755, 769 (4th Cir. 2022); *see also id.* ("[I]t bears emphasizing that a false statement is material under § 1001 when it has 'a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed.'" (quoting *United States v. Hamilton*, 699 F.3d 356, 362 (4th Cir. 2012))). Before applying the aforementioned legal standard, two factual findings must be made: (1) what was "the defendant's relevant statement," and (2) what was "the decision the government agency was trying to make." *Id.* at 771 (quoting *United States v. Gaudin*, 515 U.S. 506, 512 (1995)). Ultimately, it is irrelevant "whether the false statement *actually*

---

[5] 324 U.S. 246 (1952).

*influenced* the [agency's] decision-making process." *Id.* at 769 (quoting *Hamilton*, 699 F.3d at 362).

With respect to § 1001, "the investigation of wrongdoing is a proper governmental function; and since it is the very purpose of an investigation to uncover the truth, any falsehood relating to the subject of the investigation perverts that function." *Id.* at 772 (quoting *Brogan v. United States*, 522 U.S. 398, 402 (1998)). In *United States v. Smith*, 54 F.4th 755 (4th Cir. 2022), the Fourth Circuit found that "[the defendant's] denials that he discussed the very plans which prompted the [agency]'s inquiry, if believed, 'were capable of influencing the direction of the investigation.'" *Id.* at 769 (quoting *United States v. Barringer*, 25 F.4th 239, 251 (4th Cir. 2022)); *see id.* at 772 (concluding that the defendant's answer, "though revealing only his untruthfulness[,] could alter the [agency]'s decision-making"); *see also United States v. Fondren*, 417 F. App'x 327, 335 (4th Cir. 2011) (finding "there was ample circumstantial evidence from which the jury could have inferred the materiality of the false statements"). The court reasoned that the "misrepresentations, under normal circumstances, could cause [agency] agents to re-direct their investigation to another suspect, question their informant differently or more fully, or perhaps close the investigation altogether." *Id.* (quoting *United States v. McBane*, 433 F.3d 344, 352 (3d Cir. 2005)).

Ms. Farley contests the materiality of the false statements because there was no expert testimony from a prison doctor that W.W. should have been sent to a hospital. Mot. New Trial 6–7. Without that testimony, Ms. Farley argues that her own false statement about calling Dr. Young was immaterial because W.W. did not need to go to the hospital. *Id*. at 6–7. Meanwhile, the Government contends that Ms. Farley's entire defense to federal agents was that Dr. Young refused to send W.W. to the hospital, when in reality there was no legitimate reason for failing to send

W.W. to the hospital. Resp. Opp'n 7. Therefore, the Government argues that a jury could conclude that Ms. Farley's lie as it pertained to her role in W.W.'s placement in suicide watch was material. *Id.*

Ms. Farley's protestations about the Government's lack of expert testimony on this issue are irrelevant. The relevant question here is whether Ms. Farley's own false statements had "a natural tendency to influence, or [were] capable of influencing, the decision-making body to which [they were] addressed," here OIG. *Smith*, 54 F.4th at 769. The answer is undoubtably yes. The Court finds that there was substantial evidence presented for a reasonable jury to conclude that Ms. Farley's false statement had "a natural tendency to influence, or [were] capable of influencing, the decision-making body to which [they were] addressed," here OIG. *Smith*, 54 F.4th at 769. According to the evidence adduced at trial, Ms. Farley stated to a government investigator that she used a BOP telephone to contact the on-call physician, Dr. Young, Trial Tr. 1431:10–23, ECF No. 333 (SA Whitney's testimony regarding her interview of Ms. Farley, at which time Ms. Farley informed her she called Dr. Young from the triage room), that she discussed W.W.'s medical symptoms and care with Dr. Young, Trial Tr. 1431:10–13, ECF No. 333 (SA Whitney's testimony that Ms. Farley stated she called Dr. Young because of W.W.'s condition), and that she did not send W.W. to the hospital based on Dr. Young's guidance and that Ms. Farley should instead call the on-call psychologist, Trial Tr. 1432:1–9, ECF No. 333 (SA Whitney's testimony that Ms. Farley stated that she did not send W.W. to the hospital based on Dr. Young's guidance, and that Dr. Young instead instructed her to call Dr. Biber). *But see* Trial Tr. 2625:9–11, ECF No. 336 (Ms. Farley's testimony at trial that she did not call Dr. Young).

The materiality of these misrepresentations may, as in *Smith*, be inferred, given their ability to "cause [OIG] agents to re-direct their investigation to another suspect, question their informant

differently or more fully, or perhaps close the investigation altogether." 54 F.4th at 769 (quoting *McBane*, 433 F.3d at 352). The Government was not required at trial to identify a specific decision impacted—merely that the misrepresentations had "a natural tendency to influence, or [were] capable of influencing" OIG decision-making. *Smith*, 54 F.4th at 769. SA Whitney was investigating the cause and circumstances surrounding W.W.'s death. *See* Reply 7; Resp. Opp'n 16. Therefore, Ms. Farley's "false statements . . . weren't harmless lies told in a vacuum; they related to other [possible] subjects of [OIG's] investigation," *Smith*, 54 F.4th at 772, e.g., Dr. Young, insofar as Ms. Farley's statements called into question the truthfulness of the actions reported by Dr. Young and could therefore have redirected the investigation towards Dr. Young and/or others, *see, e.g.*, Trial Tr. 1422:12–15, 1431:10–1433:23 ECF No. 333 (SA Whitney testimony that Ms. Farley stated she called Dr. Young, who told her to call psychology and that W.W. was not going to the hospital).

Because "[w]hen statements are aimed at misdirecting agents and their investigation, even if they miss spectacularly or stand absolutely no chance of succeeding, they satisfy the materiality requirement of 18 U.S.C. § 1001," *Smith*, 54 F.4th at 772 (quoting *United States v. Lupton*, 620 F.3d 790, 806–07 (7th Cir. 2010)), and because such misdirecting statements were presented at trial, the Court finds that there was sufficient evidence introduced, such that a "jury could have inferred the materiality of the false statements." *Fondren*, 417 F. App'x at 335–36; *see also Smith*, 54 F.4th at 769. Acquittal is therefore improper as to Count Five.

Based on the above, the Court will deny Ms. Farley's request for acquittal, finding that there was substantial evidence presented at trial that a reasonable jury could find Ms. Farley guilty on the § 1001 false statements charge.

**B. Rule 33 New Trial Analysis**

Ms. Farley's four arguments for a new trial can be grouped as follows. First, Ms. Farley generally adopts three arguments presented by her co-Defendant, Shronda Covington, in her Motion for a New Trial, with some minor embellishments, to wit: the Government violated its *Brady*, *Giglio*, and Jencks Act obligations; the Government adduced or failed to correct perjured testimony at trial; and the Government made prejudicial and otherwise improper statements in its closing argument. Mot. New Trial 7, 13–14; Reply 7; *see generally* Covington Mot. New Trial, ECF No. 363. Next, Ms. Farley argues that a new trial is warranted based on the "spillover" of prejudicial evidence introduced in connection with charges and conduct of which the jury acquitted Ms. Farley. Mot. New Trial 8–12; Reply 3–4. Finally, Ms. Farley contends that the cumulative effect of the foregoing "prejudice and injustices," particularly in light of the fact that Ms. Farley was sick when she testified in her own defense, weighs in favor of a new trial. Mot. New Trial 13, 15–16; Reply 4–6.

1. <u>Arguments Generally Adopted from Ms. Covington</u>

Ms. Farley explicitly moved to adopt the following grounds for relief from Ms. Covington's Motion for a New Trial: (1) *Brady*/*Giglio* and Jencks Act, (2) the use of perjured testimony, (3) and prejudicial and improper closing argument. Mot. New Trial 7. To the extent these arguments are directly adopted, they fail for the reasons articulated in the Court's Memorandum Opinion denying Ms. Covington's Motion for New Trial, issued contemporaneously herewith; the Court does not engage with them further. The aspects of the arguments specific to Ms. Farley are addressed below.

a. Brady, Giglio, *and Jencks Act Violations*

Ms. Farley offers one elaboration to Ms. Covington's *Brady*, *Giglio*, and Jencks Act argument in her Reply. Reply 7. As described in this Court's Memorandum Opinion addressing Ms. Covington's Motion for a New Trial, Ms. Covington alleges that the Government withheld *Brady* information pertaining to ███████████████████████████, specifically in the form of an e-mail describing █████████████████████. Mem. Op. Covington Mot. New Trial 7–10, ECF No. __ (issued contemporaneously herewith). Ms. Farley notes that although Ms. Covington received a production including the aforementioned e-mail prior to trial, Ms. Farley did not. Reply 7. For that reason, Ms. Farley argues that the Government's failure to provide the e-mail to *her* constituted a *Brady* violation. Reply 7. Ms. Farley argues that the withheld evidence had "very significant value in terms of the credibility, bias[,] and motive [of] one of the most critical witnesses against Ms. Farley – Agent Whitney." *Id.* Additionally, Ms. Farley notes that had she obtained this e-mail prior to trial, she could have investigated the source of the e-mail and its recipients. *Id.*

The Government did not address this argument because Ms. Farley raised it in her Reply, and the Court did not explicitly instruct the Government to do so when it directed the filing of a sur-reply addressing another newly raised argument. Although the Court could consider this line of questioning as waived, it will nevertheless address Ms. Farley's argument. *See United States v. Palacios*, 677 F.3d 234, 244 n.5 (4th Cir. 2012) ("[The Defendant] did not raise this contention in his opening brief and, as such, has waived it.").

A *Brady* violation may warrant a new trial if the defendant can show that "the undisclosed evidence was (1) favorable to [her] either because it is exculpatory, or because it is impeaching; (2) material to the defense, *i.e.*, prejudice must have ensued; and (3) that the prosecution had [the]

materials and failed to disclose them." *United States v. Wolf*, 860 F.3d 175, 192 (4th Cir. 2017); *see also United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015) (noting that material impeachment information is also encompassed within the *Brady* rule (citing *Giglio v. United States*, 405 U.S. 150, 153–54 (1972)). Evidence is material when there is a "reasonable probability that its disclosure would have produced a different result." *Parker*, 790 F.3d at 558 (quoting *United States v. Bartko*, 728 F.3d 327, 340 (4th Cir. 2013)). This reasonable probability standard is met if "the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Id.* (quoting *Bartko*, 728 F.3d at 340). Impeachment evidence may be "material when the witness in question 'supplied the only evidence of an essential element of the offense,' especially if the undisclosed evidence was the only significant impeachment material." *Id.* (quoting *Bartko*, 728 F.3d at 339). However, impeachment evidence is not material when it is cumulative of evidence of bias or partiality already presented and thus would have provided only marginal additional support for the defense." *Id.* (quoting *Bartko*, 728 F.3d at 339).

Ms. Farley's argument fails because, like this Court determined in its Memorandum Opinion denying Ms. Covington's Motion for a New Trial, the e-mail is not material.[6] *See* Mem. Op. Covington Mot. New Trial 7–10. At no point in her filings does Ms. Farley explain how this e-mail or how information about ███████████████ was material, inasmuch as the e-mail was so significant that it could "undermine confidence in the outcome of the trial." *Parker*, 790 F.3d at 558 (quoting *Bartko*, 728 F.3d at 339). While the e-mail might have some bearing on SA Whitney's credibility, bias, or motive, that specific line of questioning was not foreclosed to Ms. Farley or any other Defendant in this case. *See* Pretrial Hrg. Tr. 72:24–73:17, ECF No. 340

---

[6] Although Ms. Farley states that the e-mail would have allowed her to "investigate[] the source of the information," she does not say how any such resulting information would have been favorable to her. Reply 7. Even if it were favorable to Ms. Farley, her argument fails because the e-mail is not material and information about ████████████ is not relevant to whether or not Ms. Farley made false statements.

(pretrial ruling permitting cross of SA Whitney regarding her service of a target letter on Lieutenant Arkin).  Indeed, Ms. Farley and Ms. Covington thoroughly cross-examined SA Whitney about her conduct throughout the investigation.  *See, e.g.*, Trial Tr. 1500:15–1504:17, 1506:2–12, 1511:6, ECF No. 333 (SA Whitney cross examination); *id.* at 1490:5–13.  Therefore, the Court is satisfied that SA Whitney's bias, credibility, and motive was adequately put on display for the jury to consider when making its determination.  The Court finds that any testimony as it pertains to the e-mail regarding ██████████████████████ "would have provided only marginal additional support for the defense," *see Parker*, 790 F.3d at 558, even assuming the Court were to change its relevance analysis with respect to ████████████████████.  More critically, the e-mail would have been cumulative of the other evidence presented regarding SA Whitney's or OIG's supposed bias in conducting its investigation and focusing that investigation on Ms. Farley.  *See id.*  Thus, the e-mail is not material under *Brady*, and the fact of its non-introduction at trial does not merit a new trial.

### b. Use of Perjured Testimony at Trial

Ms. Farley also adopts Ms. Covington's argument that the Government relied on perjured testimony, in violation of the Defendants' due process rights, and that such testimony clearly impacted the jury's verdict.  *See* Mot. New Trial 13 (citing Covington Mot. New Trial, ECF No. 345).  Specifically, Ms. Farley points to purportedly false testimony from Dr. Biber and SA Whitney, stating that they were two of three principal witnesses against Ms. Farley with respect to her false statement charge, and therefore such false statements had a "direct impact" on her conviction.  Mot. New Trial 13.  Ms. Farley also claims that the Government mispresented the alleged phone call that took place between Nurse Woolridge and Dr. Young.  *Id.*  Ms. Farley claims that this is important because Dr. Young is the third principal witness and "three of the four false

16

statement allegations involve a phone call allegedly made by Nurse Farley to Dr. Young on the same date." *Id.* Finally, in her Reply, Ms. Farley argues that the Government failed to correct Dr. Berry's false testimony, and its failure to do so similarly constituted a due process violation warranting a new trial. Reply, 4–6.[7]

As explained when it addressed Ms. Covington's Motion for New Trial on similar grounds, a new trial is required when the Government knowingly uses false testimony that could "affect the judgment of the jury," or, more specifically, when the use of false testimony "create[ed] a false impression of material fact." *United States v. Briscoe*, 101 F.4th 282, 298 (4th Cir. 2024). "The government does not have to solicit the false evidence; it is enough if the government allows the evidence to go uncorrected when it surfaces." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). The defendant "bears 'the heavy burden of showing that [a witness] testified falsely,'" *Briscoe*, 101 F.4th at 298 (quoting *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987)), and cannot rely merely on the fact that a witness changed their story, or had "credibility problems," or was otherwise simply "unreliable," *id.* (citing *Griley*, 814 F.2d at 971). In the event a court were to find that the statements relied on by the Government were not mere inconsistencies but were indeed false, the court would need to assess the statements under what is known as the *Napue* standard. This requires a showing of (1) falsity, (2) materiality of the testimony, and (3) the prosecutor's knowledge of the statement's falsity. *Juniper v. Davis*, 74 F.4th 196, 211 (4th Cir. 2023) (citing *Napue v. Illinois*, 360 U.S. 264 (1959)). A statement is material "if there is *any reasonable likelihood* that the false testimony *could have*

---

[7] The Court acknowledges that this argument was raised to bolster Ms. Farley's prosecutorial-misconduct-at-closing argument. Reply 4–5. Nevertheless, it is appropriate to address it alongside the other perjury/knowing use of false testimony claims, as the same legal standard applies.

*affected* the judgment of the jury." *Id.* at 211–12 (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

### i. Testimony of SA Whitney and Dr. Biber

The Government does not directly address Ms. Farley's position with respect to SA Whitney; however, it does address Ms. Farley's position regarding Dr. Biber in its response to Ms. Covington's Motion for a New Trial. Resp. Opp'n Covington Mot. New Trial 23 n.10. Namely, its position is that the Court should deny the request for a new trial as to this argument because Ms. Farley failed to raise new arguments or support her claim that the identified statements were false or material. *Id.*

Even though the Government does not explicitly address Ms. Farley's argument regarding SA Whitney, the Court agrees that Ms. Farley has not raised materially new arguments in her motion with respect to either Dr. Biber or SA Whitney. Therefore, Ms. Farley's arguments fall short for the same reason that Ms. Covington's did. *See* Mem. Op. Covington Mot. New Trial 20–23, 27–28. Specifically, SA Whitney's testimony was not false and at most amounted to confusion or a mistake. *Id.* at 18–20. Further, the Defendants were able to expose any inconsistencies with Dr. Biber's testimony to the jury, thereby allowing "[t]he jury [to] hear[] the testimony, including the cross examination, [and] weigh[] the evidence, including the reliability of the witnesses." *Briscoe*, 101 F.4th at 299.

### ii. Phone Records

Ms. Farley's argument with respect to the phone records is also unavailing. Ms. Farley makes no argument about why a phone call that may have taken place between Nurse Woolridge and Dr. Young would have any impact on or otherwise have impacted the jury's determination of whether Ms. Farley made false statements to OIG investigators years after W.W. died. *See* Mot.

New Trial 13. Therefore, it is unclear how Nurse Woolridge's cross examination created "a false impression of *material* fact" with respect to Ms. Farley. *Briscoe*, 101 F.4th at 298 (emphasis added). Instead, it appears that the Government's questions exposed inconsistencies to the jurors and allowed them to weigh the evidence, including the "reliability of witnesses." *Id.* at 299 (considering that "credibility and reliability [are] for the jury to decide" in its alleged use of perjured testimony analysis, which was distinct from the court's Rule 29 analysis). Therefore, the Court does not find that the Government knowingly used false testimony in this regard.

### *iii. Testimony of Dr. Berry*

Finally, Ms. Farley belatedly contends that the Government failed to correct false testimony from Dr. Berry about whether W.W. was screened for K2. Reply 4–5. She argues that it was the Government's responsibility to correct Dr. Berry's testimony that W.W. had been screened for K2 given the fact that, *after* testifying, Dr. Berry confirmed that THC or cannabinoids, including K2, had not been tested for. *Id.* at 4. Therefore, according to Ms. Farley, Dr. Berry's misleading testimony in conjunction with the prosecutor's closing remark that there was no evidence "whatsoever" of any drug use had a profound effect the jury. *Id.* at 6.

In response, the Government first asserts that Ms. Farley's argument is waived because she failed to raise it in her original motions for judgment of acquittal or in the instant Motion in the first instance. Sur-Reply 1. Next, the Government contends that Ms. Farley's *Napue* claim fails at every prong. *Id.* at 2. The Government states that Dr. Berry's testimony was not false or material. *Id.* at 2–4. Dr. Berry was clear in her testimony that she did not conduct the toxicology report, so she could not say with certainty that W.W. was tested for K2. *Id.* at 2–3. The Government also notes that Ms. Farley should not have expected the Government to correct the error during trial, because when it provided the clarification to defense counsel mid-trial, it advised

19

defense counsel of its position that no correction was necessary because Dr. Berry testified candidly that she was not sure which drugs were included in the toxicology screening. *Id.* at 3. In response to this disclosure and notice, defense counsel took no action to recall Dr. Berry, reopen the issue, or otherwise move for clarification while the case was still being tried. *Id.* Lastly, the Government reiterates that its closing argument was proper. *Id.* at 5.

As a preliminary matter, the Court agrees that Ms. Farley waived this argument because she failed to raise it in her original filing. *See United States v. Caldwell*, 7 F.4th 191, 212 n.16 (4th Cir. 2021); *Palacios*, 677 F.3d at 244 n.5. However, even if that were not the case, the Court would still find Ms. Farley's argument unavailing pursuant to *Napue*, because the Court finds that Dr. Berry's testimony was not false.

Although Dr. Berry testified at trial that she "know[s] that cannabinoids are part of the screening that [the lab] do[es]," and so, in her opinion, K2 "should have been included in the toxicology screening," Trial Tr. 581:2–7, ECF No. 331, Dr. Berry immediately caveated her assertion by stating that she is not a toxicologist, she did not sign off on the report, and someone else might be better equipped to answer the questions relating to the toxicology report. Trial Tr. 581:8–11, ECF No. 333. She then went even further, stating that she would "not attest, with a hundred percent certainty, that [K2] was screened for." *Id.* at 581:10–15. Such caveats fatally undercut Ms. Farley's cries of falsity. Absent falsity, Ms. Farley is not entitled to a new trial based on this testimony.[8] *Cf. Juniper*, 74 F.4th at 211 (citing *Napue*, 360 U.S. 264); *Briscoe* 101 F.4th at 298.

---

[8] Even if the Court did consider Dr. Berry's statement to be false, Dr. Berry's testimony ultimately was not material to the charges faced by Ms. Farley and so would fail on that second *Napue* prong as well. *Juniper*, 74 F.4th at 211. For many of the same reasons the Court does not find that the prosecutor committed misconduct in her closing, *see infra* Part III.B.1.c., the Court is not convinced that there was any reasonable likelihood that Dr. Berry's testimony could have affected the jury's judgment with respect to the ultimate questions before it. No evidence was presented during trial that W.W. presently used drugs, aside from the fact that he was issued prescription medicine. *See, e.g.*, Trial Tr. 478:24–480:13, ECF No. 333. And, as the prosecution argued during rebuttal, even if W.W. had taken drugs,

### c. Prosecutorial Misconduct During Closing Argument

Ms. Farley's third argument adopted from her co-Defendant is that improper statements by the prosecutor during closing arguments prejudiced her and thus warrant a new trial. Beyond the specifics articulated by Ms. Covington (and which the Court has rejected as insufficient to necessitate a new trial, *see* Mem. Op. Covington Mot. New Trial 32–37), Ms. Farley argues that the Government's closing argument was improper because the prosecutor made a "patently false" statement: that there was no evidence "whatsoever" that W.W. abused drugs. Mot. New Trial 13–14.

A prosecutor's statements made during trial amount to reversible error only if the statements were "(1) improper and (2) 'prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.'" *Chong Lam*, 677 F.3d at 203. To evaluate whether comments made during a closing argument are prejudicial to the point of requiring a mistrial, courts in the Fourth Circuit consider six factors. *United States v. Beeman*, __ F.4th __, 2025 WL 1141866, at *6 (4th Cir. 2025). These are:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury.

---

that would be irrelevant to the question of whether W.W. had an emergent medical need that BOP personnel needed to address and/or whether Ms. Farley made false statements or a false report, all as charged. *See generally* Superseding Indictment; *see also* Trial Tr. 3117:2–5, ECF No. 333 ("Whether that [medical] need was caused by a stroke, the neurological problem that Dr. Berry suggested, a prescription medication or illicit drugs, there's no question he needed help, and the defendants knew it too."). Therefore, Dr. Berry's otherwise unaddressed representation that she believed W.W. was tested for K2 was not material, as there was not a reasonable likelihood that specific statement affected the jury's judgment.

*Id.* (quoting *United States v. Wilson*, 624 F.3d 640, 656–57 (4th Cir. 2010)).  "These factors are to be viewed in the context of the trial as a whole, 'and no one factor is dispositive.'"  *Id.* (quoting *United States v. Lighty*, 616 F.3d 321, 361 (4th Cir. 2010)).

Ms. Farley contends that the Government's comment that there was "no evidence whatsoever that Mr. Walters abused drugs" was an improper argument because that was patently false.  Mot. New Trial 13–14.  Ms. Farley bases this on Dr. Biber's Suicide Risk Assessment for W.W., which references prior substance abuse.  *Id.* at 14.  As a result, Ms. Farley submits that the prosecutor's remarks were improper, highly prejudicial, and deprived Ms. Farley of a fair trial.  *Id.*

The Government points out that there was no evidence that W.W. abused drugs at the time of the Defendants' charged conduct.  Resp. Opp'n 11.  Not only is it irrelevant that documents show that W.W. may have abused drugs at some time, but the Government contends that Ms. Farley failed to provide any case law to support her position that the Government needed to clarify that the "evidence" referred to evidence presented during trial.  *Id.*

The Court examines this statement in the context of the prosecutor's entire rebuttal closing and does not find that the remark was either improper or prejudicial.  It is clear that the prosecutor was discussing drug usage in response to Ms. Farley's argument that W.W.'s symptoms were caused by K2 or Cogentin.  *See* Trial Tr. 3115:23–3117:16, ECF No. 338.  Immediately preceding the contested remark, the prosecutor stated, "[b]y that time, Mr. Walters was eight hours into his ordeal," which strongly suggests that her following comment about there being no evidence of drug abuse "whatsoever" was specific to the issue at hand.  *Id.* at 3116:14–15.  Following her remark that there was no evidence "whatsoever," the prosecutor went on to state that even if W.W. had used drugs, it would not have mattered, because BOP staff would have been obligated to help him, regardless of the underlying cause of his crisis.  *Id.* at 3116:21–3117:8; *id.* at 3117:2–5

("Whether that need was caused by a stroke, the neurological problem that Dr. Berry suggested, a prescription medication or illicit drugs, there's no question he needed help, and the [D]efendants knew it too.").  Put into context, the Court does not find that the Government's single statement was improper, highly prejudicial, or otherwise deprived Ms. Farley of a fair trial.

Additionally, the Court instructed the jury to base its "verdict only on the evidence received in the case."  Jury Instr. 3, ECF No. 317.  Since the "juries are presumed to follow their instructions," the Court presumes that the jury did just that.  *Chong Lam*, 677 F.3d at 204.

Based on the foregoing, the Court concludes that the prosecutor's isolated statement did not have a tendency to mislead the jury or prejudice Ms. Farley, they were introduced in response to an argument presented by defense counsel, and the Court's instructions cured any potential prejudice.  *Beeman*, ___ F.4th at ___, 2025 WL 1141866, at *6.  Additionally, for the reasons discussed in the Court's acquittal analysis, *supra* Part IV.A., sufficient competent proof was introduced to otherwise support the conviction of Ms. Farley.  *Beeman*, ___ F.4th at ___, 2025 WL 1141866, at *6.  As a result, a new trial is not warranted by the challenged statement, and no other prosecutorial misconduct warrants such a remedy, either.  *See* Mem. Op. Covington Mot. New Trial 32–37.

2. Spillover Effect

Ms. Farley raises a number of arguments premised on what she classifies as the "prejudicial spillover effect."  Mot. New Trial 8–12.  In particular, she argues that a new trial is warranted because the Government presented evidence during trial that supported what has now, post-verdict, become acquitted conduct.  *Id.*  Ms. Farley urges the Court to follow the First and Eleventh Circuits in considering acquitted conduct as synonymous with reversed convictions, which warrant a new trial.  *Id.* at 8–9.  Ms. Farley further asserts that, but for the prosecution of (fully acquitted) co-

Defendant Yolanda Blackwell, the overly prejudicial suicide watch video would never have been admitted against Ms. Farley or Ms. Covington. *Id.* at 10; Reply 3–4. Ms. Farley also asserts that had she not faced the evidence that support her now-acquitted conduct with respect to the § 242 and § 1519 charges, her credibility would not have been attacked and she would have been able to present specific instances of good character evidence. Mot. New Trial 12; Reply 3. Lastly, Ms. Farley proffers that a recent update to the sentencing guidelines preventing acquitted conduct from being considered should impact how the Court considers Ms. Farley's acquitted conduct in the Rule 33 new trial context. Mot. New Trial 7.

The Government disagrees. It argues that the Court's evidentiary rulings and the jury's verdict are not disturbed by the acquittal of certain conduct and certain defendants. Resp. Opp'n 7–8. The Government contends that even if the Court granted a new trial on this basis, the suicide watch video would still be admissible against Ms. Farley. *Id.* at 10. Lastly, the Government states that all three Defendants were properly joined, and the now-contested evidence was properly admitted against them. *Id.* at 8–10.

"[I]t has long been settled that inconsistent jury verdicts do not call into question the validity or legitimacy of the resulting guilty verdicts." *United States v. Green*, 599 F.3d 360, 369 (4th Cir. 2010). A defendant may not challenge her conviction "merely because it is inconsistent with a jury's verdict of acquittal on another count." *United States v. Thomas*, 900 F.2d 37, 40 (4th Cir. 1990). Indeed, inconsistent verdicts should not "be interpreted as a windfall to [one side] at the [other's] expense," because it is possible that the jury came to its verdict "through mistake, compromise, or lenity." *Id.* (quoting *United States v. Powell*, 469 U.S. 57, 65 (1984)).

The Fourth Circuit has considered "prejudicial spillover effect," though admittedly not in the specific context of a defendant's acquittal by jury. *See, e.g.*, *United States v. Banks*, 104 F.4th

24

496, 520 (4th Cir. 2024) (considering spillover argument after vacating certain counts post-conviction based on an intervening Supreme Court decision); *United States v. Barringer*, 25 F.4th 239, 247 (4th Cir. 2022) (considering spillover argument after the trial court granted a motion for judgment of acquittal); *United States v. Hornsby*, 666 F.3d 296, 311 (4th Cir. 2012) (considering spillover argument after reversing conviction on a jointly-tried count).  Nevertheless, the Court finds this precedent to sufficiently analogous—particularly *Barringer*, which involved a post-trial judgment of acquittal—so as to control the analysis.  Notably, in each case considering a prejudicial spillover argument, the Fourth Circuit has made clear that, for a defendant to prevail, she must show:  "(1) 'that the challenged evidence would have been inadmissible at trial without the vacated [or acquitted] count,' *and* (2) that the challenged evidence 'prejudiced [her] convictions on the remaining counts.'"  *Banks*, 104 F.4th at 520 (emphasis added).  A defendant will be unable to satisfy the second prong (prejudice) if the trial court gave the jury an "explicit instruction that the jury must consider each count separately," *id.* (quoting *Barringer*, 25 F.4th at 249), and the defendant does not present evidence to undermine the presumption that juries follow the instructions given, *id.*; *see United States v. Chong Lam*, 677 F.3d 190, 204 (4th Cir. 2012) (absent evidence to the contrary, "juries are presumed to follow their instructions").

Here, Ms. Farley's prejudicial spillover argument fails across the board based on the Court's explicit jury instructions.  At the conclusion of the evidence in this case, the Court instructed the jury to consider each count separately.  Specifically, the Court instructed as follows:

> A separate crime is alleged in each count of the superseding indictment.  Each alleged offense, and any evidence pertaining to it, should be considered separately by the jury.  The fact that you find a Defendant guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged against that Defendant, or any other Defendant.
>
> You must give separate and individual consideration to each charge against each Defendant.

Jury Instr. 9.

Because Ms. Farley has presented no evidence to rebut the presumption that the jurors followed the instructions given in this case, *Chong Lam*, 677 F.3d at 204, she cannot show the necessary element of prejudice, even assuming the challenged evidence would not have been admissible[9] absent the acquitted count or co-Defendant.[10,11,12]

As a final matter, the Court agrees with the Government that Ms. Farley's sentencing guideline argument fails for lack of support. Ms. Farley provides nothing but unsupported argument to support her position that a recent sentencing guideline update has any bearing on whether a court should grant a defendant's motion for a new trial.

---

[9] Or, in the inverse, would have been admissible, as in the case of the good character evidence she claims she would have been entitled to present absent the acquitted charges. This position, however, fails under Federal Rules of Evidence 401(a)(1), 404(a)(2)(A), and 405 and in light of this Court's prior opinion addressing this very issue. *See* United States v. Covington, 2023 WL 8482581, at *3 (E.D. Va. Dec. 7, 2023) ("Truthful character is thus not an 'essential element' of [] the § 1001 charge . . .; Defendants Farley and Covington thus cannot use evidence of specific instances (e.g., awards or commendations) to prove their truthful character.").

[10] Counter to any such assumption, the Court further notes that Ms. Farley has not met her burden of proving that the most "egregious" evidence, the suicide watch video, would not have been admissible against her in a new trial absent the acquitted charges and Ms. Blackwell. The Court previously found that the suicide watch video is "at least relevant and probative" with respect to the question of whether "factual contentions made by the Defendants . . . are untrue." *Covington*, 2024 WL 707388, at *4 (quoting *United States v. Bailey*, 405 F.3d 102, 112 (1st Cir. 2005)). Further, "[w]hen a defendant has been charged with attempted or actual obstruction of justice with respect to a given crime, evidence of the underlying crime and the defendant's part in it is admissible to show the motive for [her] efforts to interfere with the judicial processes." *Hornsby*, 666 F.3d at 311. Therefore, it is likely that the suicide watch video, or at least portions of it, would have been admissible in a new trial. For those additional reasons, Ms. Farley's argument fails.

[11] Indeed, one of the cases Ms. Farley cites in support of her own position supports the Court's finding on this issue. In *United States v. Simon*, 12 F.4th 1 (1st Cir. 2021), the First Circuit concluded that there was no evidence of prejudicial spillover when "the jury differentiated not only between counts but among defendants—and that selectivity is 'strong evidence' that the jury was not blinded by raw emotion but, rather, properly compartmentalized and applied the law to the facts." *Id.* at 44 (quoting *United States v. Bailey*, 405 F.3d 102, 112 (1st Cir. 2005)). Moreover, the *Simon* court also found, similar to what the Fourth Circuit has articulated, that "[a]s a general rule, 'instructing the jury to consider each charged offense, and any evidence relating to it, separately as to each defendant' constitutes an 'adequate measure [] to guard against spillover prejudice.'" *Id.* (quoting *United States v. Casas*, 425 F.3d 23, 50 (1st Cir. 2005)).

[12] To the extent Ms. Farley renews her argument that she was improperly joined with Ms. Blackwell and that the Court improperly admitted the suicide watch video in the first instance, such arguments are unavailing for the reasons described *supra* and in its prior ruling, Mem. Op. Mot. Limine, *United States v. Covington*, 2024 WL 707388 (E.D. Va. Feb. 20, 2024), ECF No. 132, in determining that Ms. Farley's substantial rights were not so prejudicially affected as to deprive her of a fair trial. *Chong Lam*, 677 F.3d at 203.

Based on the foregoing, the Court does not find any prejudicial spillover of evidence in this case.

3. <u>Cumulative Effect</u>

Ms. Farley's final argument is that the circumstances of trial "cumulatively[] resulted in extreme prejudice and unjust treatment." Mot. New Trial 15. This argument combines the rights-violations (*Brady*, *Giglio*, Jencks Act, due process, etc.), perjured testimony, prosecutorial misconduct and incorrect judicial rulings that the Court has addressed above, as well as an argument that Ms. Farley was sick during trial and would like the opportunity to present testimony with a clearer mind and more audible voice. *Id.*[13] The Court addresses the last point first.

The Government correctly points out that Ms. Farley's desire to testify when she is not sick does not constitute grounds for a new trial. *See* Resp. Opp'n 11–12. "Criminal defendants in this country are entitled to a fair, but not a perfect trial." *Sherman v. Smith*, 89 F.3d 1134, 1137 (4th Cir. 1996). Moreover, the fact that the jury returned a mixed verdict against Ms. Farley, insofar as she was acquitted of all but the § 1001 charge, suggests that her presentation on the stand was not so impaired as to have itself undermined her testimony in her own defense or otherwise contributed to the jury's verdict.

As to the cumulative effect of Ms. Farley's various charges of error and prejudice, the Court is not persuaded. As with the various grounds for acquittal and new trial argued by Ms. Covington, the Court does not find that Ms. Farley's collective arguments—none of which are sufficient to merit a new trial on their own—otherwise "weigh[] so heavily against the verdict that

---

[13] Ms. Farley also suggests in connection with her prejudicial-spillover arguments that "[c]oncerns . . . about [SA] Whitney would be more clearly presented at a retrial, and would be better developed based on information recently obtained." Mot. New Trial 12. While Ms. Farley does not specify what such information may be, the Court infers that Ms. Farley is referring to the e-mail regarding ████████████████; regardless, the Court rests on its earlier conclusion that Ms. Farley had ample opportunity to cross examine SA Whitney on her motives and biases at trial originally, and simply wishing for another bite at the apple based on information the Court has otherwise determined to be inadmissible does not rise to grounds for a new trial.

it would be unjust to enter judgment." *Millender*, 970 F.3d at 531 (quoting *Arrington*, 757 F.2d at 1485). Therefore, the Court will not grant a new trial based on the cumulative circumstances of the original trial.

## IV. CONCLUSION

Therefore, for the reasons stated above, the Court finds that there was sufficient evidence presented at trial for the jury to find beyond a reasonable doubt that Ms. Farley violated 18 U.S.C. § 1001, and further that the evidence and circumstances of trial do not weigh so heavily against the verdict to render the verdict unjust. Therefore, the Court denies Ms. Farley's Motion for Judgment of Acquittal and New Trial.

_____/s/ _____

Roderick C. Young
United States District Judge

Date: May 19, 2025
Richmond, Virginia